■ In the Matter of City of New Rochelle, Appellant, v. Sound Oper-ating Corp. et al., Defendants, and B.B.F. Holding Corp., Respondent.— In a condemnation proceeding, plaintiff appeals from a final order of the Supreme Court, Westchester County, dated July 31, 1967, which confirmed the report of the Commissioners of Appraisal, awarding respondent $287,400 for the prop-erty taken. Ordered reversed, on the law and the facts, without costs, and proceeding remanded to Special Term for remittal to a commission for rehear-ing and determination, limited solely to the issue of proof of value of the subject building based on reproduction cost less depreciation. In our opinion, under the circumstances herein, the Commissioners of Appraisal properly concluded that the subject building, a commercial laundry, was a specialty and that the only tenable method of valuation was reproduction cost less depreciation (cf. *Matter of City of New York* [*Kramer Realty Corp.*], 16 A D 2d 148; *Matter of City of New York* [*Maxwell*, 15 A D 2d 153). The evidence adduced at the hearings amply demonstrated that not only was the building designed for a unique purpose, i.e., specially built and equipped as a commerical laundry, but also that there have been no comparable transactions, either by way of sales or rentals, which would permit utilization of any other appropriate method of valuation. As stated in *Matter of City of New York* [*Field's Baking Corp.*] (27 A D 2d 539, 540) : " In the absence of proof showing rents of other build-ings with the essential distinguishing features of claimant's, the value must be arrived at on the basis of the evidence given as to reproduction cost less depreciation ". However, while we are of the view that this method of valua-tion was the only fair and feasible method of fixing value, we are of the further opinion that, in the interests of justice, the proceeding should be remitted for a rehearing at which both parties will be afforded an opportunity to present such proof of reproduction cost less depreciation as may be available to them. Based upon such additional proof, the commission should make new findings and a new determination as to the value of the building. Beldock, P. J., Christ, Rabin and Hopkins, JJ., concur; Benjamin, J., concurs in part and dissents in part, with the following memorandum : I agree that the order confirming the Commissioners' award should be reversed, but I disagree with the majority's conclusion that this building was a specialty, that the only tenable method of valuation was reproduction cost less depreciation, and that the proceeding should be remitted for a rehearing and redetermination solely on the basis of reproduction cost less depreciation. In my opinion this building was not a specialty; it was and is erroneous to use reproduction cost less depreciation as the sole method of valuation; there was competent and adequate proof to support a valuation based on comparables and capitalization of income; the award was shockingly excessive no matter what the method of valuation; and there is enough proof in the record to justify a reduction of the award by us to a proper amount. There was ample proof that the subject building was not structurally unique, but instead that it was structurally the same as countless others and merely had several specialized appurtenances attached to it. There was ample proof that it was usable not only as a laundry, but also for many other industrial and commerical purposes. There was ample proof that its taking did not force the owner to erect another identical building for the continuation of its laundry business, because of the total absence of other buildings usable for that business. On the contrary, the owner merely bought or leased another previously-erected building, which was not equipped with the generating plant here claimed as the main unique feature of the condemned building; moved its laundry business there; and has continued to operate it there with electricity bought from a public utility.

These facts establish that this building was not a specialty (*Matter of City of New York [Maxwell]*, 15 A D 2d 153; *Matter of City of New York [Kramer Realty Corp.]*, 16 A D 2d 148). As the building was not a specialty, it was error to value it solely on the basis of reproduction cost less depreciation (*Matter of Ford [Swartwout]*, 26 A D 2d 980; *Matter of City of New York [Maxwell]*, supra; *Matter of City of New York [Kramer Realty Corp.]*, supra); and the Commissioners should also have considered other, more acceptable methods, such as sales of comparables and capitalization of rental income (*Matter of Ford [Swartwout]*, supra; *Matter of City of New York [Maxwell]*, supra; *Matter of City of New York [Kramer Realty Corp.]*, supra; *Matter of Huie [Fletcher]*, 2 N Y 2d 168; *Banner Milling Co. v. State of New York*, 240 N. Y. 533). It is now settled that we have the power to modify a shockingly excessive award made by Commissioners and are not limited to confirmation or rejection of the award (*Matter of Ford [Siska]*, 24 A D 2d 14, affd. 22 N Y 2d 834). There is adequate proof in this record to support such disposition of the appeal by us and I believe we should so dispose of it. The Commissioners awarded $210,500 for this 42-year-old, concrete block and frame building, which had no basement, was one story high, and contained about 8,150 square feet of space; the award thus comes to almost $26 a square foot for the building alone, without the underlying land. In addition, the Commissioners awarded $55,000 (at $3 a square foot) for the underlying land and an adjoining vacant lot of about the same size; and they awarded $21,900 for certain mechanical equipment in the building, thus making the total award $287,400. There was competent proof of comparables, in better condition than the subject building, which sold at prices ranging from about $8.75 to $12 a square foot, including the underlying land; that the fair value of the subject building (without its specialized mechanical equipment) was $5.50 a square foot or about $45,000, including the underlying land; that the adjoining vacant lot was worth $18,000; that the mechanical equipment (including some items incorporated by the Commissioners in their award for the building) was worth $66,000; and that the total value was $129,000 by the comparable sales method. There was competent proof that rentals of comparable buildings (without the specialized mechanical equipment) ranged between 75 cents and $1.48 a square foot; that a fair rental for the subject building was about $1.20 a square foot, or $9,800 a year for the entire building; that the net rental income was $3,900; that the net income, capitalized at 17½% (7½% plus 10% for amortization of the building), resulted in a value of $22,300 for the building; that this $22,300, added to the $25,500 value of the underlying land, produced a fair value of $47,800 for the land and building; and that, when we add on the $18,000 for the adjoining lot and the $66,000 for the mechanical equipment, the total value was $131,800 by the capitalization of income method. There was competent proof that the reproduction cost of this building (without the specialized mechanical equipment) would be $57,600; that it would have depreciated about 60% since it was built about 42 years ago; that its depreciated reproduction cost would thus be about $23,000, which, added to the $25,500 value of the underlying land, would result in a fair value of about $48,500 for the land and building; and that, when we add on the $18,000 for the adjoining lot and the $66,000 for the mechanical equipment, the total value was $132,500 by the method of reproduction cost less depreciation. On this record it seems clear that the Commissioners' award of $287,400 was shockingly excessive and that the fair value cannot exceed about $150,000 no matter what method of valuation is used. If we were to use an excessively high figure of $10 a square foot for reproduction cost, the building would cost

$81,500 to reconstruct. If we were to depreciate that cost by only 42% (though I think the city expert's estimate of 60% depreciation was more realistic), we would have a depreciated reproduction cost of $47,270. If we add to that a sum of $50,000 for all the land, including the adjoining lot (a total of 18,250 square feet), the fair value of the land and building would be $97,270. And when we add to that the sum of $66,000 for the specialized mechanical equipment (which I consider a very generous allowance) we reach a total figure of $163,270 by the method of reproduction cost less depreciation. The figure is smaller by the method of capitalizing rental income. I would use the city expert's estimate of $1.20 a square foot for the rental value, as I consider that quite fair and realistic. That figure would produce a gross rental of about $9,800 a year and a net rental income of about $6,300 a year for the building and the underlying land. If we were to capitalize that at the overgenerous rate of 10% a year the result would be a $63,000 value for the land and building. And when we add to that the sums of $18,000 for the adjoining lot and $66,000 for the specialized mechanical equipment we reach a total figure of $147,000 by the method of capitalization of rental income. About the same result is reached by the method of comparable sales. In view of the proof that better buildings sold between $8.70 and $12 a square foot, and that the city's expert valued this building at only $5.50 a square foot because of its inferior condition, I think a valuation of $8 a square foot is ample. On that figure, the building and the underlying land would be worth about $65,000. And when we add to that the sums of $18,000 for the adjoining lot and $66,000 for the specialized mechanical equipment we reach a total figure of $149,000 by the method of comparable sales. In light of the foregoing analysis, it is my view that a total award of $150,000 would be more than fair in this case. I think we should reduce the Commissioners' award to that amount.